Jane E. CROW *v.* Dewey Wolfgang CROW

CA 88-68                                                      759 S.W.2d 570

Court of Appeals of Arkansas
Division I
Opinion delivered November 9, 1988

*Gary R. Gibbs*, for appellant.

*John B. Thurman*, for appellee.

JAMES R. COOPER, Judge. The appellant and the appellee were divorced on September 26, 1986. By agreement between the parties, the appellant had custody of the parties' three minor children and the appellee agreed to pay $1200.00 per month child support. In May 1987, the parties entered into a consent decree which changed custody of the two older children to the appellee. The appellee subsequently filed a petition requesting a reduction of the amount of child support he was required to pay to the appellant. The chancellor granted his petition and reduced the amount of child support to $400.00 per month. On appeal, the appellant argues that the chancellor erred in modifying the amount of child support because the amount was part of an executed independent property settlement agreement. We affirm.

The agreement, which was incorporated by reference into

the divorce decree, provided that the appellant was to receive $1200.00 per month child support until the youngest child reached the age of eighteen. The agreement also provided that "neither party shall bring an action to increase or decrease the amount of child support during this period of time." The agreement further recited that it was the intent of the parties to finally settle the property issues and "determine future property rights, claims and demands in such a manner that any action with respect to the other be finally and conclusively settled by this Agreement."

It is the appellant's contention that the chancellor could not modify or alter the decree as to child support because all the provisions were based on an independent, integrated contract. We disagree. The court always retains jurisdiction over child support, as public policy. Regardless of the terms of an independent contract purporting to restrict a court's power to modify support payments, either party has a right to ask for a change in child support. *Nooner* v. *Nooner*, 278 Ark. 360, 645 S.W.2d 671 (1983). Although we are confident that this rule is correct, we recognize that there are cases which have left room for confusion.

In *Bachus* v. *Bachus*, 216 Ark. 802, 227 S.W.2d 439 (1950), the husband agreed to pay the wife $200.00 per month as alimony and support for their four children. The Arkansas Supreme Court reversed the chancellor's reduction of the monthly payments, stating

> The parties to a divorce action may agree upon the alimony or maintenance to be paid. Although the court is not bound by the litigants' contract, nevertheless if the court approves the settlement and awards support money upon that basis there is then no power to modify the decree at a later date. *McCue* v. *McCue*, 210 Ark. 826, 197 S.W.2d 938 (1946).

We note that the quoted paragraph never specifically mentioned "child support," but uses terms such as "maintenance" and "support money." Further, we note that the only authority cited for the Court's ruling, *McCue* v. *McCue*, 210 Ark. 826, 197 S.W.2d 938 (1946) had nothing to do with child support since the only issues presented dealt with alimony.

In later decisions the Supreme Court held that the chancery court did have the power to modify agreements as to provisions for support of minor children on a showing of changed conditions necessitating such modification. *See Reiter* v. *Reiter*, 225 Ark. 157, 278 S.W.2d 644 (1955); *Lively* v. *Lively*, 222 Ark. 501, 261 S.W.2d 409 (1953). The court later explained this discrepancy in *Collie* v. *Collie*, 242 Ark. 297, 413 S.W.2d 42 (1967). The Court stated:

> Any apparent conflict in these cases is probably attributable to the fact that the alimony and child support were not provided for separately in the *Bachus* case, but child support was a separate item in the *Lively* case. *See Reiter* v. *Reiter*, 225 Ark. 157, 278 S.W.2d 644. At any rate we think that the better rule is that a chancery court may withhold enforcement of the payment of child support payments that have become inequitable by change of circumstances and the court may either reduce or increase amounts of child support payments provided for by such agreements because of changed circumstances. The interests of minors have always been the subject of jealous and watchful care by courts of chancery.

242 Ark. at 301 (citations omitted).

Any remaining area of confusion should have been eliminated in *Nooner* v. *Nooner*, 278 Ark. 360, 645 S.W.2d 671 (1983). In *Nooner* the Supreme Court eliminated any distinction between combined and separate child support and alimony payments. In *Nooner* the parties entered into an independent contract which provided for the husband to pay $100.00 per week as child support and alimony. The Court stated:

> The Court always retains jurisdiction over child support, as public policy. No matter what an independent contract states, either party has a right to ask for a change in child support. In this case where alimony and child support were not separately stated, the appellant can ask the Chancery Court to make a determination as to how much of the $100 is child support and how much is alimony.

Thus we see that the Supreme Court clearly held that agreements

for child support remain modifiable, even where alimony and child support are lumped together as one sum. We note that *Nooner* did not mention *Bachus* v. *Bachus.* Further, in *Thurston* v. *Pinkstaff,* 292 Ark. 385, 730 S.W.2d 239 (1987) the Supreme Court said:

> [S]uch separate agreements, even if incorporated into the decree, cannot diminish the power of the court to modify support upon a determination of a change of circumstances . . . .

292 Ark. at 389.

The appellant cites *McInturff* v. *McInturff,* 7 Ark. App. 116, 644 S.W.2d 618 (1983) and *Reves* v. *Reves,* 21 Ark. App. 177, 730 S.W.2d 904 (1987) in support of her argument that when an independent contract is so integrated that the various provisions constitute reciprocal considerations, the chancellor lacks the authority to modify the provisions pertaining to child support. We disagree.

In *McInturff* the wife had custody of the parties' three minor children pursuant to a property settlement agreement. The agreement also provided for the wife to receive, in lieu of child support, the husband's equity interest in the marital home, valued at $43,200.00. Less than two years after the divorce, the children began living with the husband. The husband petitioned the court for a *pro rata* refund of the lump sum child support. His request was granted. Citing *Bachus,* we reversed because the provision in the agreement for child support was incapable of being severed from the other provisions in the contract for alimony and division of property. In other words, it was impossible to determine how much of the $43,200.00 was intended as child support, how much was consideration for the wife's waiver of alimony, and how much was consideration for the wife's release of the husband from a $23,000.00 mortgage. Unfortunately, we also said:

> When parties execute an integrated property and support settlement agreement which is incorporated in their divorce decree, we believe the better rule is that the court cannot later alter or modify that decree unless the parties have provided for or agreed to such modification. *See Plumer* v. *Plumer,* 48 Cal. 2d 820, 313 P.2d 549

(1957). Our review of the parties' contract and the other evidence before us leads us to one conclusion: The contract was integrated, it was intended to be a final settlement with respect to all property, financial, alimony and support matters, and it did not provide for modification. Therefore, we hold the trial court erred in modifying the parties' agreement, and we reverse accordingly.

We think that the result in *McInturff*, that the husband was not entitled to a *pro rata* refund, was correct, but our reliance on *Bachus* and its progeny was misplaced. *Nooner* was decided only a few weeks before *McInturff*, and *Nooner* clearly allows a chancellor to determine which amounts are child support if the independent contract does not so state. Again, *McInturff* involved a refund of a lump sum child support payment rather than the chancellor's authority to order prospective child support payments and, as we noted, our ruling did not preclude the husband from petitioning the chancery court for future child support. 7 Ark. App. at 119. The issue of the refund in *McInturff* did not involve the same public policy considerations as cases dealing with prospective child support payments, because refusing to refund the money to the father did not deprive the children of support. *See Nooner* v. *Nooner*, 278 Ark. 360, 645 S.W.2d 671 (1983). *McInturff* should be strictly limited to its unique fact situation because it involved a refund of a non-severable, lump-sum child support payment rather than an order of child support based on changed circumstances and the best interests of the children. The quoted paragraph is not, at least after *Nooner, supra*, the law in Arkansas.

■ *Reves, supra*, contains dicta regarding the trial court's authority to modify an integrated, independent agreement as it pertains to child support. This dicta followed *McInturff* and, to the extent that it departs from our holding today, is disavowed. We hold that the chancellor always retains jurisdiction and authority over child support as a matter of public policy and that, no matter what an independent contract states, either party has the right to request modification of a child support award. *Nooner, supra*. In light of our holding, we think that the parties' agreement not to seek any increases or decreases in child support is void as against public policy. The interests of minors have always been the subject of jealous and watchful care by chancery

courts and the public interest in the welfare of children is sufficient reason for the exercise of this power. *Collie* v. *Collie, supra.*

Affirmed.

JENNINGS and COULSON, JJ., agree.