Cite as 2024 Ark. App. 583

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-24-28

|  |  |  |
|---|---|---|
|  |  | **Opinion Delivered** November 20, 2024 |
| ANGELA STYLES | | |
| | APPELLANT | APPEAL FROM THE POPE COUNTY CIRCUIT COURT [NO. 58DR-18-53] |
| V. | | |
| | | HONORABLE GORDON W. "MACK" MCCAIN, JR., JUDGE |
| JAMES STYLES | | |
| | APPELLEE | AFFIRMED |

**KENNETH S. HIXSON, Judge**

In this postdivorce dispute between appellant Angela Styles and appellee James (Jamey) Styles, Angela appeals from a default judgment entered by the trial court that ordered her to pay the boarding-school expenses for one of the parties' minor children, MC3. Angela also appeals from a subsequent order that awarded Jamey $1650 in attorney's fees. On appeal, Angela argues that because of technical issues with her law firm's internet provider that prevented her from receiving notice of Jamey's petition for relief, the trial court erred in granting the default judgment. Angela also argues that because the trial court erred in granting the default judgment, the trial court erred in awarding attorney's fees. We affirm the default judgment and the order awarding attorney's fees.

I. *Facts and Procedural History*

Angela and Jamey were divorced on February 10, 2020, and a final order was entered in the divorce proceeding on July 27, 2021, that granted Jamey custody of the parties' four minor children subject to Angela's standard visitation. The final order also provided that Jamey "is in charge of all aspects of the children's lives," including the "children's education." Angela appealed from the final order in the divorce case, raising numerous arguments on appeal, including that the trial court erred in awarding custody of the children to Jamey. In *Styles v. Styles*, 2024 Ark. App. 435, ___ S.W.3d ___ (*Styles I*), among other dispositions of the case not pertinent to this appeal, we affirmed the trial court's decision to award Jamey custody of the children, and our decision did not disturb the trial court's finding that Jamey is in charge of all aspects of the children's lives, including the children's education.

The postdivorce litigation herein began on April 15, 2022, when Jamey filed a petition for modification of visitation regarding the parties' daughter, MC3, who was then fourteen years old. Jamey's petition alleged that MC3 was enrolled in Clarksville Junior High School and exhibited a negative attitude, defiance, and lack of effort. As a result, Jamey asserted that MC3 was in need of boarding school and petitioned to have her placed in Teen Challenge, a boarding school in Disney, Oklahoma. In his petition, Jamey stated that the initial payment for the boarding school was $10,600 and that the monthly tuition was $3750. Jamey stated that he was willing to pay the fees but requested that the trial court order Angela to also participate in the fee payments. On April 29, 2022, Angela responded to Jamey's petition, asking that it be denied.

On May 3, 2022, the trial court held a hearing on Jamey's petition for modification of visitation. At the hearing, the trial court noted that it had put Jamey in charge of the children's education in the final order entered in the divorce proceeding. Angela's counsel argued that, if the trial court granted Jamey's petition to place MC3 in boarding school, Jamey should bear the expense, and she should not be required to pay for half the cost. The trial court ruled from the bench that it would grant Jamey's petition to place MC3 in the Teen Challenge boarding school in Oklahoma. The trial court announced further that Jamey would make the initial payment of $10,000[1] but that the parties would equally bear the cost of the monthly tuition. However, the trial court also made it clear that the issue regarding the division of costs for the boarding school would remain open subject to final litigation at a later time. Angela's counsel stated, "So . . . the issue that is preserved to be later litigated is the cost of the tuition and all of that?" The trial court replied, "Absolutely." Jamey's counsel agreed to prepare the written order, and the trial court instructed Jamey's counsel to leave the door open for litigating the cost issue.

On May 10, 2022, the trial court entered an order granting Jamey's petition to send MC3 to boarding school. That order provided that the initial payment of $10,000 would be paid by Jamey and that "the parties shall equally bear the [monthly] payment for the boarding school." The order provided further that the trial court "shall allow either party in the future to assert why the expenses should not be split evenly, including the initial $10,000 or that

---

[1]The initial payment was actually $10,600, but this discrepancy is not at issue on appeal.

3

all expenses should be borne by one party or the other due to fault in the need for the placement of the minor child in a boarding school. The court will allow litigation regarding such expenses in the future."

A year later, on June 16, 2023, Jamey filed a "Petition for Reimbursement and Future Responsibility for Payment of Teen Challenge Boarding School." In that petition, Jamey asserted that in the May 10, 2022 order, the trial court had allowed either party in the future to assert why expenses should not be split evenly or that all expenses should be borne by one of the parties. Jamey asserted that after MC3 was enrolled in Teen Challenge, he had filed an emergency motion for modification of visitation, contempt, and for injunction due to Angela's disdain for the school and her repeated interference with MC3's enrollment. This emergency motion resulted in an order entered by the trial court in August 2022 ordering that Angela have no contact with MC3 or with the Teen Challenge staff until MC3 was released from the program. In Jamey's petition for reimbursement, he alleged that based in part on this August 2022 order, Angela should be responsible for reimbursement of the initial $10,000 paid by him, along with payment for all the tuition expenses throughout MC3's stay at the boarding school. Jamey's June 16, 2023 petition for reimbursement was served electronically on Angela's counsel the same day it was filed.

Having received no response from Angela's counsel, on August 1, 2023, Jamey moved for default judgment. Attached to the motion was documentation that Angela's counsel was served electronically with the petition for reimbursement on June 16, 2023. In the motion for default judgment, Jamey asserted that despite Angela's being served with his petition for

4

reimbursement by electronic filing through her counsel, Angela had failed to file a timely response to the petition. Jamey argued that Angela had failed to plead or otherwise defend against his petition and that pursuant to Arkansas Rule of Civil Procedure 55,[2] he was entitled to a default judgment. Jamey's August 1, 2023 motion for default judgment was served electronically on Angela's counsel the same day it was filed.

On August 25, 2023, Angela filed a response to Jamey's petition for reimbursement, which had been served on her counsel on June 16, 2023. In her response to Jamey's petition for reimbursement, Angela disputed that she should be required to pay any of the costs associated with MC3's boarding school that had been chosen by Jamey over her objection. Angela cited two Arkansas Court of Appeals cases in support of her response.[3]

On August 25, 2023, Angela also filed a response to Jamey's motion for default judgment, which had been served on her counsel on August 1, 2023. In her response to Jamey's motion for default judgment, Angela acknowledged that she did not file a response to Jamey's petition for reimbursement until August 25, 2023. Angela, however, stated that her counsel had technical issues within his law office that impaired his ability to properly receive email communications from most individuals and organizations, and thereby her counsel did not have actual notice of the filing of Jamey's petition for reimbursement.

---

[2]Rule 55(a) provides that when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules, judgment by default may be entered by the court.

[3]*Olinghouse v. Olinghouse*, 2022 Ark. App. 114; *Hyden v. Hyden*, 85 Ark. App. 132, 148 S.W.3d 748 (2004).

Angela asserted that her counsel's technical issues in this regard had since been resolved. Angela argued in her response that Rule 55 is discretionary rather than mandatory and that granting a default judgment on Jamey's petition for reimbursement based upon a technicality would be a miscarriage of justice. As such, Angela requested that Jamey's motion for default judgment be denied.

On December 6, 2023, the trial court held a hearing on Jamey's petition for reimbursement and motion for default judgment. With respect to the motion for default judgment, Angela's counsel did not dispute that Jamey's counsel had taken proper measures to serve the petition for reimbursement through the electronic filing system. Angela's counsel, however, asserted that electronic service of the petition was never received due to an issue with his law firm's internet provider, which was the reason for Angela's untimely response. Angela's counsel stated:

> It wasn't that I wasn't getting any e-file notifications, it's that our server and internet provider were having intermittent issues in which I was not getting e-file notifications, but I also was not getting certain emails from individuals. They would call in and tell me they were not getting responses from me. . . . If I wasn't receiving any emails for a period of even two days my office would certainly have noticed that, but because it was an intermittent issue that has spanned over several months, that certain email notifications were not coming in, certain emails for individuals were not coming in, it took us longer to realize that we might have an issue here. That has since been resolved. But at that time, I was not getting notifications like I should.

Angela's counsel argued that due to these technical issues, a default judgment was inappropriate due to surprise, excusable neglect, unavoidable casualty, or other just cause as contemplated by Rule 55(c)(1). Angela's counsel also contended that Angela should not be punished for something out of her control and stated:

6

This is my fault. This is an issue that I had on a technological issue here in which I was getting intermittent notices and sending things which was not her fault, this is mine, and I don't think she should be punished for something like that. I think that she should be given a fair and right opportunity for all the issues to be heard, for the case law to be considered and that you shouldn't have judgment entered against her by default.

In response to Angela's counsel's arguments regarding the motion for default judgment, the trial court stated that Jamey's counsel had provided "proof of his side of the equation" and then stated, "And I'm wondering do you have any proof of your side of the equation other than just what you are telling me[?]" Angela's counsel replied that he had no documentation or other proof to substantiate the alleged internet issues or to show that he had not received the petition for reimbursement.

The trial court announced from the bench that it would grant the default judgment because there was a document showing electronic proof of service with no proof to counter that. The trial court asked Angela's counsel if he wanted a separate hearing on damages, and Angela's counsel stated that he did not want a damages hearing because he accepted the exhibit offered by Jamey as to the costs associated with the boarding school. That exhibit showed that Jamey had made the initial payment of $10,600 and had contributed to twelve tuition payments in the amount of $1875 each, for a total cost of $33,100, for which he was seeking reimbursement from Angela.

The following week, on December 13, 2023, the trial court entered an order granting Jamey's motion for default judgment and awarding him a judgment against Angela for $33,100. On December 19, 2023, the trial court entered an order to the circuit clerk to

issue Jamey a check for $19,414.14 representing the balance of funds Angela had deposited into the registry of the court and ordered Angela to pay Jamey the remaining balance of $13,685.86. On January 5, 2024, the trial court entered an order awarding Jamey $1650 in attorney's fees.[4]

On January 5, 2024, Angela timely filed a notice of appeal wherein she designated for appeal the trial court's orders entered on May 10, 2022; December 13, 2023; December 19, 2023; and January 5, 2024. On appeal, Angela argues that the trial court erred in granting the default judgment and that the case should be remanded for a hearing on the merits of Jamey's petition for reimbursement, and she also argues that because the default judgment should be reversed, so should the trial court's order awarding attorney's fees.

## II. *Finality*

Before addressing Angela's arguments, we must first address Jamey's contention in his brief that we lack jurisdiction to hear this appeal. For the following reasons, we disagree with Jamey's claim and conclude that we have appellate jurisdiction of this appeal.

Jamey asserts that one of the four orders Angela designated for appeal was the May 10, 2022 order wherein the trial court granted Jamey's petition for modification of visitation and permitted him to enroll MC3 in the Teen Challenge boarding school. Jamey argues

---

[4]After the trial court had announced from the bench that it was granting Jamey's motion for default judgment for reimbursement of his costs associated with the boarding school, Jamey had filed, on December 11, 2023, a motion to be awarded $1650 in attorney's fees as the prevailing party in the litigation.

that because Angela did not file a timely notice of appeal from that order within thirty days as required by Ark. R. App. P. – Civ. 4(a), we lack jurisdiction to consider this appeal.

We do not agree with Jamey's claim that the May 10, 2022 order was a final and appealable order from which an immediate appeal could have been taken. An order is final and appealable if it dismisses the parties from the court, discharges them from the action, or concludes their rights to the subject matter in controversy. *Yafai Inv., Inc. v. Nassar*, 2022 Ark. App. 346, 652 S.W.3d 617. An order that contemplates further action by a party or the court is not a final, appealable order. *Id.*

The trial court's May 10, 2022 order placed MC3 in the boarding school, but in accordance with the discussion at the hearing on the motion, the order specifically provided that the issue of the expenses associated with the boarding school remained open for future litigation. Moreover, even were we to agree that the May 10, 2022 order was a final order from which an appeal could have been taken, the default judgment entered by the trial court on December 13, 2023, which effectively ordered Angela to pay all the expenses associated with the boarding school, was itself an appealable order, and Angela timely appealed from that order as well as the subsequent order awarding Jamey attorney's fees. For these reasons, we conclude that we have jurisdiction to hear this appeal and to address Angela's arguments on appeal that neither the default judgment nor the order awarding attorney's fees should have been entered.

III. *Standard of Review*

9

The standard by which we review the grant or denial of a motion for default judgment is whether the trial court abused its discretion. *Bowles v. Taylor*, 2024 Ark. App. 299, 689 S.W.3d 447. The trial court abuses its discretion when it acts thoughtlessly, improvidently, or without due consideration. *Nicholas v. Jones*, 2022 Ark. App. 55, 640 S.W.3d 417. Default judgments are not favored by the law and should be avoided when possible. *Bowles*, *supra*. Because of its harsh and drastic nature, which can result in the deprivation of substantial rights, a default judgment should be granted only when strictly authorized and when the party affected should clearly know he is subject to default if he does not act in a required manner. *Steward v. Kuettel*, 2014 Ark. 499, 450 S.W.3d 672.

IV. *Analysis*

Angela's primary argument on appeal is that, although she admits she did not timely respond to Jamey's petition for reimbursement,[5] the trial court erred in granting the default judgment under the circumstances presented. Specifically, Angela argues that the default judgment should not have been entered because a technical error with Angela's attorney's internet provider prevented her attorney from receiving notice of the petition for reimbursement. Angela acknowledges that service was permitted upon her attorney and that Arkansas Rule of Civil Procedure 5(b)(2) provides that such service may be effected by electronic transmission, including email. However, Angela notes that Rule 5(b)(2) also

---

[5]Neither Angela nor Jamey discusses on appeal whether Angela's response was due within thirty days under Arkansas Rule of Civil Procedure 12 or within ten days under Rule 6. Because Angela met neither of these deadlines and she concedes on appeal that she failed to file a timely response to Jamie's petition, this distinction is a moot point.

provides, "Service is complete upon transmission but is not effective if it does not reach the person to be served." Angela also cites Administrative Order No. 21, which governs electronic filing, and Section 12(d)'s provision that, "A party whose filing is made untimely as result of the technical failure of the electronic filing system or other technical problems may seek appropriate relief from the court." Angela asserts that problems with internet servers are the very type of unavoidable casualty that Administrative Order No. 21 envisions and that the trial court abused its discretion in not finding that the technical problems experienced by Angela's attorney's law firm excused her untimely filing. As such, Angela requests that we reverse the default judgment and remand for the trial court to decide Jamey's petition for reimbursement on the merits. We disagree with Angela's argument and conclude that the trial court did not abuse its discretion in granting the default judgment for the following reasons.

Administrative Order No. 21(7)(a) provides, "Registered users of the electronic filing system consent to electronic service of electronic documents as the only means deemed to constitute service and such notice of filing is valid and effective service of the document on the registered users and shall have the same legal effect as service by conventional means." Section 7(c)(1) provides, "The electronic filing system shall provide notice to all registered users associated with the case that an electronic document has been filed and is available on the document management system. The notice shall be sent electronically to the addresses furnished by the registered users associated with the case." Section 7(e) provides, "Electronic service is complete at the time of transmission of the notice required by Section 7(c)."

11

Administrative Order No. 21(12) addresses technical failures and provides:

(a) *Electronic Filing System Errors.* The electronic filing system is deemed subject to a technical failure on a given day if the site is unable to accept filings continuously or intermittently over the course of any period of time greater than one hour after 8:00 a.m. that day. Anticipated system outages must be communicated to registered users by electronic mail within a reasonable time prior to the outage and must be posted on the web site, if possible. A technical failure of the electronic filing system shall excuse an untimely filing.

(b) *Other Technical Problems.* Other technical problems in the nature of an unavoidable casualty, such as problems with the user's Internet Service Provider (ISP) that prevent a registered user from transmitting an electronic filing, may constitute a technical failure under these procedures excusing an untimely filing.

(c) *Conventional Filing Allowed.* In the event of a technical failure of the electronic filing system or other technical problems that prevent a registered user from submitting an electronic filing, documents should be submitted to the Clerk's office conventionally.

(d) *Relief After Technical Failure. A party whose filing is made untimely as the result of a technical failure of the electronic filing system or other technical problems may seek appropriate relief from the court. Sample language is attached to this order as Form A.* Technical failures of the electronic filing system under subdivision (a) of this Section 12 are excused. *For technical problems that are considered to be user-related under subdivision (b) of this section, the court for good cause shown may excuse an untimely filing.*

(Emphasis added.) "Form A," referenced above and attached to Administrative Order No.

21, provides a mechanism to show that an untimely filing was due to a technical failure:

Form A

IN THE _____ COURT OF _____ COUNTY, ARKANSAS
_____ Plaintiff(s)
vs. Case No._____
_____ Defendant(s)

DECLARATION THAT PARTY WAS UNABLE TO FILE IN A TIMELY MANNER

[NAME OF REGISTERED USER AND PARTY REPRESENTED] was unable to file [NAME OF DOCUMENT] in a timely manner due to technical difficulties. The deadline for filing the [NAME OF DOCUMENT] was [DATE]. The reason(s) that I was unable to file the [NAME OF DOCUMENT] in a timely manner, and the good faith efforts that I made before the filing deadline to both file in a timely manner and to inform the court and the other parties that I could not do so, are as follows:

[Statement of reasons and good faith efforts to file and to inform]

I declare under penalty of perjury that the foregoing is true and correct.

Respectfully submitted,
/s/

Name of Registered User
Address
City, State, Zip Code
Phone:
Email:

It is undisputed that Angela's counsel did not complete and verify Form A with the details of the alleged technical problems experienced by his law firm, nor did Angela's counsel present any other proof of the alleged technical problems with his law firm's internet provider that prevented him from receiving notice of the petition for reimbursement. Other than the in-court statements of Angela's counsel at the hearing on the default judgment, there is nothing in the record that evidences a technical error that prevented receipt of Jamey's electronic service of the petition. At the hearing, the trial court noted that Jamey had presented proof of electronic service but that Angela was admittedly without any proof of the technical problems asserted by her counsel in his statements to the court. Administrative Order No. 21(12)(d) provides that "[f]or technical problems that are considered to be user-related . . . the court for good cause shown *may* excuse an untimely

13

filing." (Emphasis added.) Under these circumstances, we cannot say that the trial court acted thoughtlessly, improvidently, or without due consideration in finding that Angela failed to show good cause for her untimely response and in granting Jamey's motion for default judgment on his petition for reimbursement.

Angela next argues that, because the trial court erred in granting a default judgment, it also erred in awarding attorney's fees and in directing the clerk to distribute money Angela had deposited into the registry of the court to Jamey. Because we affirm the default judgment, we reject this argument.

Finally, Angela also states in her brief that if we deem the trial court to have ruled on the merits of Jamey's petition for reimbursement of the boarding-school costs, the trial court erred in ordering her to pay any of the costs. Angela, however, agrees that the trial court's order was a default judgment and raises this as only an alternative argument. Because the trial court's order granting a default judgment on Jamey's petition for reimbursement was premised solely on Angela's failure to timely respond to the petition, and the trial court did not reach the merits of the petition, neither do we.

## V. *Conclusion*

In conclusion, we hold that the trial court committed no abuse of discretion in granting Jamey's motion for a default judgment. And because we affirm the default judgment, we likewise affirm the trial court's order awarding Jamey attorney's fees and the order directing the clerk to distribute money that Angela had deposited into the registry of the court to Jamey.

14

Affirmed.

GLADWIN and THYER, JJ., agree.

*Brett D. Watson, Attorney at Law, PLLC*, by; *Brett D. Watson*, for appellant.

*McDaniel Wolff PLLC*, by: *Bart W. Calhoun* and *Brittany D. Webb*, for appellee.